**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IAN T. ISAAC by his guardian CECILIA G. SANTOS, and CECILIA G. SANTOS individually,<br><br>Plaintiffs,<br><br>v.<br><br>SEGWAY, INC., *et al.*,<br><br>Defendants. | Case No. 2:26-cv-04181 (BRM) (AME)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Segway, Inc.'s ("Defendant") Motion to Compel Arbitration ("Motion"). (ECF No. 16.) Ian T. Isaac ("Isaac") by his guardian Cecilia G. Santos, and Cecilia G. Santos individually (together, "Plaintiffs") filed an Opposition (ECF No. 28), and Defendant filed a Reply (ECF No. 31). Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendant's Motion is **DENIED.**

## I. BACKGROUND

### A. Factual & Procedural Background

On or about January 8, 2024, Isaac purchased a Ninebot KickScooter F35 (the "Original Scooter") through Defendant's website. (ECF No. 16-2 at 8; ECF No. 28 at 2.) After Isaac received the Original Scooter in the mail, he contacted Defendant's customer support line on January 16, 2026, to make a claim for a missing charger. (ECF No. 16-2 at 8; Audio Recording Regarding

Missing Charger (ECF No. 30, Ex. 2-1).) Defendant then shipped a new charger to Isaac. (ECF No. 16-2 at 9.) Once Isaac received the charger, the Original Scooter's battery did not seem to work (*id.*), so he again contacted customer service; on said call, the call center agent offered a replacement scooter (the "Replacement Scooter"). (*Id.*; Audio Recording Regarding Non-functional Charger (ECF No. 30, Ex. 2-2) at 0:06:05–0:06:48.) Isaac followed up with customer support two more times to discuss the status of the Replacement Scooter and asked whether he had to ship the Original Scooter back before receiving a new one. (ECF No. 16-2 at 9; First Audio Recording Regarding Replacement Scooter (ECF No. 30, Ex. 2-3); Second Audio Recording Regarding Replacement Scooter (ECF No. 30, Ex. 2-4).) On March 13, 2024, Defendant shipped a second refurbished Ninebot KickScooter F35 to Isaac at his address. (ECF No. 16-2 at 9.)

On August 2, 2025, Isaac was riding the Replacement Scooter on Palisade Avenue in Jersey City, New Jersey, when the front wheel suddenly locked. (ECF No. 28 at 2.) Isaac was thrown onto the road and suffered traumatic brain injuries, rendering him immobile and non-responsive.[1] (*Id.* at 3.) On November 11, 2025, Plaintiffs filed a complaint (the "Complaint") alleging product liability, negligence, and loss of consortium claims arising from Isaac's injuries. (ECF No. 28-1.) Plaintiffs filed the Complaint in the Superior Court of New Jersey in Hudson County. (*Id.*) Defendant filed an answer (the "Answer") in state court on March 10, 2026. (ECF No. 28-3.)

On April 20, 2026, Defendant filed a Notice of Removal. (ECF No. 1.) The Court ordered the parties to attend a premotion and status conference for May 28, 2026. (ECF No. 11.) At that conference, the parties agreed to jointly file a consent order for the removal of the case to the United States District Court for the District of New Jersey, and providing Defendant fourteen days

[1] In an order dated October 1, 2025, Isaac was adjudged incompetent by the Hudson County Probate Court, and Plaintiff Santos was appointed guardian of his person and estate. (ECF No. 29-1 at 27–29.)

to file its Answer.[2] (*See id.*; *see also* ECF No. 13.) Defendant filed its Answer in this federal action on June 17, 2026. (ECF No. 14.) Defendant moved to compel arbitration on August 28, 2026. (ECF No. 16.) Plaintiffs opposed (ECF No. 28), and Defendant replied (ECF No. 31).

**B. Arbitration Agreement**

The issue before the Court is whether there exists an agreement to arbitrate between the parties and whether such agreement is enforceable. Defendant purports to have included a limited warranty and dispute resolution contract (the "Limited Warranty and Dispute Resolution Agreement") imbedded on their product website at the time of purchase, and as a downloadable quick-response ("QR") code as part of a warranty notice included with their products upon shipping. Defendant's Motion attaches an exhibit containing the following arbitration provisions:

> **THIE [sic] CLAUSE(s) [sic] CONTAINED HEREIN ARE LEGALLY BINDING BETWEEN YOU AND SEGWAY, ITS AFFILIATS [sic], THE PRODUCT'S MANUFACTURER, DISRIBUTORS [sic], SELLERS AND DESIGNERS AND INCLUDING BUT NOT LIMITED TO EACH OF THOSE SPECIFICALLY NAME(S) [sic] AND NOT SPECIFICALLY NAMED ENTITIES' PREDECESSOR COMPANIES, SUBSEQUENT COMPANIES, AFFILIATED COMPANIES, SUBSIDIARIES, PARENT COMPANIES, ADMINISTRATORS, SUCCESSORS, ASSIGNS, EMPLOYEES, AGENTS, ATTORNEYS, OFFICERS, DIRECTORS, MANAGERS, MEMBERS AND REPRESENTATIVES, AND ANY INSURER OR REINSURER THEREOF (TOGETHER "SEGWAY PARTIES"). THE CLAUSE(s) [sic] CONTAINED HEREIN MAY AFFECT YOUR RIGHTS TO (A) [sic] REMEDY AND IT IS YOUR RESPONSIBILITY TO READ THE FOLLOWING SECTIONS CAREFULLY BEFORE USE OF THE PRODUCT.**

---

[2] The Court is satisfied there is federal subject-matter jurisdiction over this case upon removal. *See* 28 U.S.C. § 1332 (federal courts have subject-matter jurisdiction over cases involving diverse parties and where the amount in controversy exceeds $75,000).

(Ninebot KickScooter Limited Warranty and Dispute Resolution Agreement (ECF No. 16-1, Ex. 1) at 19.)

Section 7.1 of the Limited Warranty and Dispute Resolution Agreement contains an agreement to arbitrate (the "Arbitration Agreement") providing:

> Segway Parties and you agree that any dispute, controversy or claim arising out of, relating to or in connection with this agreement, the limited warranty, the sale, condition or performance of the product, whether based in contract, tort, fraud, misrepresentation or any other legal theory at law or in equity, including but not limited to any claims for death, injury or property damages, shall be submitted to binding arbitration upon the request of either party upon the service of that request on the other party. This arbitration clause shall apply [to] all the persons in privity with you, including your family members, beneficiaries and assigns.

(*Id.*)

Section 7.1 of the Limited Warranty and Dispute Resolution Agreement also contains a paragraph explaining the arbitration procedures governing claims:

> The arbitration shall be conducted by the American Arbitration Association (AAA) pursuant to its Commercial Arbitration Rules and the Supplementary Procedures for Consumer-Related Disputes (collectively "AAA Rules"). The AAA Rules are available online at adr.org, or by calling the AAA at 1-800-778-7879. The arbitration shall be conducted before a single arbitrator, whose award may not exceed, in form or amount, the relief allowed by the "Liability Disclaimer and Limitation" clause herein subject to the applicable law. The arbitration tribunal shall have the power to rule on any challenge to its own jurisdiction or to the validity or enforceability of any portion of the agreement to arbitrate. Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction. You waive the right to have your claim heard in a court of law and by jury.

(*Id.*)

## II. LEGAL STANDARD

The FAA "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." *S. Broward Hosp. Dist. v. Medquist, Inc*., 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24–25 (1983)). The FAA provides that a written provision "to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Decades ago, the Supreme Court discussed 9 U.S.C. § 2 as 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *White v. Samsung Elecs. Am., Inc*., 61 F.4th 334, 338 (3d Cir. 2023) (quoting *Moses*, 460 U.S. at 24). More recently, though, the Supreme Court explained "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc*., 596 U.S. 411, 418 (2022) (quoting *Moses*, 460 U.S. at 24). Rather, this policy "is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan*, 596 U.S. at 418 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 404 n.12 (1967)). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan*, 596 U.S. at 418.

When addressing a motion to compel arbitration, a federal court is "limited to a 'narrow scope' of inquiry." *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007) (quoting *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997)); *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020). The Court may consider only narrow "gateway matters" touching on the question of arbitrability, such as whether an arbitration agreement applies to a particular controversy, or whether the parties are bound by the arbitration

clause. *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co*., 489 F.3d 580, 585 (3d Cir. 2007).

"[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." *Guidotti v. Legal Helpers Debt Resol., L.L.C*., 716 F.3d 764, 773 (3d Cir. 2013) (citation omitted). "In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc*., Civ. A. No. 10-2287, 2010 WL 3076861, at * 3 (D.N.J. Aug. 4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mortg. Corp*., 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). "State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate." *Sarbak v. Citigroup Glob. Mkts., Inc*., 354 F. Supp. 2d 531, 537 (D.N.J. 2004) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). "Under New Jersey law,[[3]] '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *Levy v. AT&T Servs., Inc*., Civ. A. No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022) (alteration in original) (quoting *James v. Glob. TelLink Corp*., 852 F.3d 262, 265 (3d Cir. 2017)). "Therefore, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" *Id*. (quoting *Crawford v. Compass Grp. USA*, Civ. A. No. 14-2545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015)). "To manifest assent, 'an offeree must provide "unqualified acceptance," which can be express or implied by conduct.'" *Id*. (quoting *Glob. TelLink Corp*., 852 F.3d at 265). For example, where

[3] Both parties agree New Jersey law applies. (*See* ECF No. 16-2 at 24; ECF No. 28 at 7.)

employees are properly notified of an arbitration agreement, and where inaction may lawfully be considered assent, "failure to opt out of the arbitration through inaction [is] a proper method to assent." *Id*. at *4 (collecting cases).

"Where arbitrability is apparent on the face of the complaint, a Rule 12(b)(6) standard of review should be applied to the motion to compel arbitration." *Sauberman v. Avis Rent a Car Sys*., *L.L.C.*, Civ. A. No. 17-756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (citing *Guidotti*, 716 F.3d at 774). However, the "Rule 12(b)(6) standard is inappropriate when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate" or when "the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (citation omitted). Rather, courts should use the Rule 56 summary judgment standard. *Id*. "Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists." *Jayasundera v. Macy's Logistics & Operations, Dep't of Hum. Res*., Civ. A. No. 14-7455, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015). In making this determination, the party opposing arbitration receives "the benefit of all reasonable doubts and inferences that may arise." *Id*.

If "no reasonable factfinder could find that the parties entered into an arbitration agreement," summary trial under 9 U.S.C. § 4 is unnecessary. *Parisi v. GreenSky, LLC*, Civ. A. No. 23-6218, 2025 WL 1603282, at *4, 6 (10th Cir. June 6, 2025); *see also Jin v. Parsons Corp.*, 966 F.3d 821, 826–27 (D.C. Cir. 2020) (holding that, "when it is apparent from a quick look at the case that no genuine disputes of material fact exist, it may be permissible and efficient for a district court to decide the arbitration question as a matter of law" through summary judgment (citation

modified)); *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) ("[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings.").

## III. DECISION

### A. Rule 56 Summary Judgment Standard Applies

The Court first determines which standard applies—Rule 12(b)(6) or Rule 56. The Third Circuit has articulated the Rule 12(b)(6) standard of review to be inappropriate if "the complaint and its supporting documents are unclear regarding the agreement to arbitrate" or "the plaintiff has responded . . . with additional facts sufficient to place the agreement to arbitrate in issue." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (quoting *Guidotti*, 716 F.3d at 776).

Here, the existence of an arbitration agreement is not clear on the face of the Complaint. The Complaint does not attach an arbitration agreement as an exhibit (*see* ECF No. 28-1), and the terms of an arbitration agreement are not contained in the Complaint (*see generally id.*). Furthermore, the Complaint does not base its causes of action on the existence of an arbitration agreement. (*See id.*) The errant references to generic "use instructions" are not specific enough to incorporate the Arbitration Agreement into the Complaint. *See Earle v. BLST Sales, Mktg. & Servicing, LLC*, Civ. A. No. 24-8983, 2025 WL 2170146, at *3 (D.N.J. July 31, 2025) ("Where a complaint does not plead or attach the relevant terms of an arbitration provision, courts apply a summary judgment standard."). Therefore, the Court is required to consider the Motion under the Rule 56 standard of review.[4]

[4] As discussed in greater detail, the Court is also satisfied Plaintiffs have come forth with reliable evidence constituting more than a 'naked assertion . . . it did not intend to be bound' by the arbitration agreement." *Guidotti*, 716 F.3d at 774 (citation omitted).

### B. Evidence Isaac Agreed to Be Bound to the Arbitration Agreement

#### 1. Defendant's Product Webpage

The parties contest whether Isaac assented to the terms of an arbitration agreement. Defendant avers Isaac was on notice of Segway's Arbitration Agreement and its terms and failed to opt out of the Arbitration Agreement within the requisite 30-day period. (ECF No. 16-2 at 26–29.) The argument presumes Isaac visited the product webpage and viewed the "specifications" options including the "Limited Warranty and Dispute Resolution Agreement," given Isaac purchased the Original Product online and given the contents of Isaac's customer service calls. (*Id.* at 28.) Additionally, Defendant relies on Isaac's receipt of the plastic bag which purportedly came with the Original and Replacement Scooters; the plastic bag should have contained a warranty notice card with a QR code on it "which would have taken him directly to the Arbitration Agreement." (*Id.* at 29.) Plaintiffs respond there is no evidence Isaac received, viewed, or read the Arbitration Agreement, and the only evidence he did any of these things is a declaration offered by Defendant's general counsel.[5] (ECF No. 28 at 9–14.)

A contractual term does not become part of a consumer transaction merely because the seller has made the term accessible somewhere on its website. *See Etrailer Corp. v. Unbeatablesale.com, Inc.,* Civ. A. No. 21-10172, 2024 WL 1016200, at *5 (D.N.J. Mar. 8, 2024) ("If [defendant's] claim of a contract's existence is based solely on the [terms and conditions] being available somewhere on its website or in an email link, which [plaintiffs] may have had access to,

[5] If Plaintiffs set forth sufficient facts refuting Defendant's contention Isaac received and had notice of the Limited Warranty and Dispute Resolution Agreement, then Plaintiffs cannot be faulted for failure to opt out of the Arbitration Agreement within the thirty-day opt-out window. *See Schmell v. Morgan Stanley & Co., Inc.*, Civ. A. No. 17-13080, 2018 WL 1128502, at *4 (D.N.J. Mar. 1, 2018) (explaining that, without adequate notice, plaintiff's assent to the opt-out terms of the arbitration agreement was not "knowing and voluntary").

this is likely insufficient to make these terms part of the parties' agreement."); *see also Glob. TelLink Corp.*, 852 F.3d at 267 ("There is an evolving body of caselaw regarding whether the terms and conditions in browsewrap agreements are enforceable, often turning on whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage.").

Defendant contends the product webpage, as it existed at the time of the January 8, 2024 purchase, "toward the end of the webpage (when a viewer scrolled down the page), . . . provided links to the product specifications" and the Limited Warranty and Dispute Resolution Agreement. (ECF No. 31 at 11; ECF No. 31-1 ¶ 12.) This is not enough. When terms purporting to bind consumers to arbitration "are linked in obscure sections of a webpage that users are unlikely to see, courts have refused to find constructive notice." *Glob. TelLink Corp.*, 852 F.3d at 267. Courts have also held "reference[s] to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms." *Lloyd v. Retail Equation*, Civ. A. No. 21-17057, 2022 WL 18024204, at *11 (D.N.J. Dec. 29, 2022); *see also Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (declining to enforce arbitration and forum selection provisions in the context of a website-based purchase, where the customer would not encounter those provisions unless she happened to scroll to a part of the website unnecessary to the transaction). Assuming the bottom of the product webpage is accurately depicted in Defendant's briefing (ECF No. 16-2 at 11), the Limited Warranty and Dispute Resolution Agreement is a downloadable PDF only viewable after scrolling down the page. Even then, the downloadable PDFs are only viewable for download after toggling to expand the "Download" portion by clicking on the arrow on the right side of the webpage. (*Id.*)

Defendant's argument that the declaration of its general counsel constitutes incontrovertible evidence Isaac had notice of the Arbitration Agreement fairs no better. (ECF No.

31 at 9–11.) The record does not reflect an authenticated copy of the version of Defendant's website as it existed in 2024, nor does the product page containing the Limited Warranty and Dispute Resolution Agreement. The record also does not reflect an authenticated copy of the version of Defendant's mobile page upon scanning the warranty notice card's QR code. Instead, Defendant's declaration offers "depictions" of what these web pages would have looked like to a purchaser. (ECF No. 16-1 ¶¶ 21, 23, 27; ECF No. 16-2 at 11, 14–15.) Mr. Zhao's Supplemental Declaration does not cure these defects. (*See* ECF No. 31-1 ¶¶ 9–10 (proffering the depiction is "true and correct").) There is also nothing in the record proving Isaac assented to the Limited Warranty and Dispute Resolution Agreement by an electronic signature, or by clicking a box acknowledging he read through the terms and conditions of purchase. *Cf. Guidotti*, 716 F.3d at 776–77 (finding—despite a signed acknowledgement—the agreement containing the arbitration clause was not supplied to plaintiff, and therefore, "[plaintiff] did not agree to, and [could not] be bound by" the provision "because she did not see them at the time she agreed to the contract and there was no meeting of the minds on the agreement to arbitrate").

While Mr. Zhao in his Declaration states he reviewed "order and transaction records, shipping records, customer service records including customer service phone calls and the contents of the output@segway.com mailbox," it is never established whether Mr. Zhao knows Isaac received the warranty code or whether Isaac scrolled down to view the Arbitration Agreement on Defendant's webpage. (ECF No. 16-1 ¶ 7.) Mr. Zhao is also unable to definitively say whether the plastic bag included the warranty code, despite all refurbished F35 KickScooters supposedly being "packaged in the same manner." (*Id.* ¶ 24.) If, generally speaking, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment," then "conclusory, self-serving affidavits" are assuredly insufficient when being brought by the movant for summary

judgment. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002); *see also Summit Metals, Inc. v. Gray*, Civ. A. No. 00-387, 2003 WL 22466195, at *1 (D. Del. Oct. 29, 2003) ("In determining whether a movant has made the requisite showing [on summary judgment], the court is required to review all the evidence, including self-serving affidavits, in the light most favorable to the non-movant and to draw every inference in the non-movant's favor.").

**2. QR Code Link**

Plaintiffs have also introduced sufficient evidence to show Defendant failed to include a warranty code with the Original Product's shipment. Defendant admits it shipped a charger to Isaac to his New Jersey address. (ECF No. 16-1 ¶¶ 10–11.) If Isaac did not receive a charger with his initial shipment, it stands to reason the plastic bag containing the warranty code was also missing.[6] Furthermore, even if Isaac was ever in possession of a QR code link, Plaintiffs' counsel has represented the QR code leads to an error message in Chinese, and not the terms of the Limited Warranty and Dispute Resolution Agreement. (ECF No. 28 at 12.) "[N]o reasonable factfinder could find that the parties entered into an arbitration agreement" on these facts. *Parisi*, 2025 WL 1603282, at *6.

Assuming for the sake of argument Defendant's shipment of the Replacement Scooter included a plastic bag with a functional warranty code which Isaac viewed, the Court would then be required to decide if Isaac received something more than what he was already entitled to receive under the first purchase in order to bind him to the Arbitration Agreement. *See Arafa v. Ahmed*, Civ. A. No. 3517-13T2, 2015 WL 9594341, at *4 (N.J. Super. Ct. App. Div. Sept. 1, 2015) (rejecting defendant's contention plaintiffs agreed to be bound by arbitration because by the time

---

[6] Upon opening the shipping box, a consumer is supposed to be presented with a clear plastic bag containing the F35 KickScooter's electronic charging device and the warranty notice card, among other items. (ECF No. 16-1 ¶¶ 23.)

plaintiffs received the terms and conditions "they had already booked and paid for the trips, thereby creating a contract"). *Cf. Bernetich, Hatzell & Pascu, LLC v. Med. Recs. Online, Inc.*, 136 A.3d 955, 962 (N.J. Super. Ct. App. Div. 2016) ("In characterizing payment as a waiver, [defendant] relies on the terms of the invoice, which provide that payment constitutes a complete waiver of any objection or dispute. . . . It lacks consideration."); *Paul v. Timko*, 811 A.2d 948, 949–951 (N.J. Super. Ct. App. Div. 2002) ("[W]hat defendants have characterized as the service contract is not in fact a contract but at most an offer for a modification of the extended warranty provision[.]"). Defendant does not dispute Isaac was entitled to receive the Replacement Scooter upon sending back the Original Scooter. (*See* ECF No. 16-2 at 29; ECF No. 30, Ex. 2-2 at 0:04:25–0:04:39.) Because the "agreement to perform a pre-existing duty . . . is not consideration," *Ahmed*, 2015 WL 9594341, at *4 n.7, the Court will not bind Isaac to the Arbitration Agreement, even if it had been accessible via the Replacement Scooter's packaging.

### C. Isaac's Customer Service Calls & Equitable Estoppel

Defendant argues the "knowingly exploit" theory of equitable estoppel to bind Plaintiffs to the Arbitration Agreement. (*See* ECF No. 16-2 at 29; ECF No. 31 at 16.) The Third Circuit addressed equitable estoppel[7] in *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001) (holding "non-signatories to an arbitration clause [are bound] when the non-signatory *knowingly* exploits the agreement containing the arbitration clause despite having never signed the agreement" (emphasis added)). Under the "knowingly exploit" theory of equitable estoppel, a non-signatory may be bound by an arbitration clause if it "embraces the agreement." *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 295 (3d

[7] Other circuits refer to this principle as "direct-benefits estoppel." *See, e.g.*, *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006).

Cir. 2004). "A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). Equitable estoppel prevents a non-signatory from "cherry-picking" beneficial contract terms while disregarding other provisions which do not benefit it or which it would prefer not to be governed by such as an arbitration clause. *Invista S.A.R.L. v. Rhodia*, S.A., 625 F.3d 75, 85 (3d Cir. 2010); *accord DuPont*, 269 F.3d at 200 ("To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." (internal citation omitted)).

The video recordings of the customer service calls do not support application of the "knowingly exploit" theory of equitable estoppel. The Court has closely scrutinized the audio recordings and can only conclude Isaac had very little awareness (if any) of the terms of the Limited Warranty and Dispute Resolution Agreement.

On January 16, 2024, Isaac inquired about "the return policy" (ECF No. 30, Ex. 2-1 at 0:01:45–0:02:30), and whether there would be "possibility" for "return or exchange" if the Original Product "d[id]n't meet [his] needs." (*Id.* at 0:02:42–0:04:00). Isaac specifically asked what the Defendant's exchange policy was if a purchaser were to use the product before sending it back (*id.* at 0:03:13–0:03:20) and mentioned not knowing if Defendant had information regarding the battery on their website. (*Id.* at 0:04:20–0:04:30). Isaac expressed concern whether using a different charger would void the same 30-day return window, and whether opening the Original Product might pose risk of property damage and injury. (*Id.* at 0:06:45–0:07:20.) At the end of the call, Isaac asked if the charger's shipment could be expedited because he "really

want[ed] to use it." (*Id*. at 0:09:47–0:10:04.) This recording does not establish Isaac demonstrated preexisting knowledge of the Defendant's policies or the contents of the product webpage. If anything, Isaac's lack of knowledge explains why he asked the questions he did on the customer service call.

The follow-up calls reaffirm the Court's view Isaac was merely trying to get what he paid for rather than invoke the Limited Warranty and Dispute Resolution Agreement. Isaac emphasized on his second call he had already waited almost a month for a working product and mentioned "they" – referring to the call center agent from the first call – "said [he] only had 30 days." (ECF No. 30, Ex. 2-2 at 0:06:09–0:06:33.) The call center agent on the third call refers to the "replacement policy," but not the Limited Warranty and Dispute Resolution Agreement. (ECF No. 30, Ex. 2-3 at 0:01:58–0:02:20.) Isaac asked "Are you guys going to replace it, are you going to send me one first, or are you going to send me a box . . . ?" (*Id*. at 0:02:33–0:02:43.) Then, on the fourth call, he described his general dissatisfaction with the wait time. (ECF No. 30, Ex. 2-4 at 0:00:45–0:01:02.)

Based on the audio recordings, the Court does not find Isaac sought to knowingly exploit a provision in the Limited Warranty and Dispute Resolution Agreement. While Isaac's request for a working charger, and then his acceptance of the call center agent's offer of a replacement, "implicates" the Limited Warranty and Dispute Resolution Agreement, "this is not enough to compel arbitration on a theory of equitable estoppel." *Haskins v. First Am. Title Ins. Co*., 866 F. Supp. 2d 343, 352 (D.N.J. 2012); *DuPont*, 269 F.3d at 200–01; *see also Invista S.a.r.l. v. Rhodia, S.A.*, Civ. A. No. 08-941, 2009 WL 1439407, at *4 (D. Del. May 20, 2009) ("[A] plaintiff will not be bound by an arbitration provision when its claims are related to but not directly based on the agreement."), *appeal dismissed*, 625 F.3d 75 (3d Cir. 2010).

Having determined the summary judgment standard applies, the Court concludes Defendant did not carry its burden to present sufficient evidence Plaintiffs agreed to arbitrate.[8] In so deciding, the Court is mindful Plaintiff, as the party opposing arbitration, "is given the benefit of all reasonable doubts and inferences that may arise." *Berkelhammer v. ADP TotalSource Grp., Inc.*, 74 F.4th 115, 117 n.3 (3d Cir. 2023) (internal quotation marks omitted) (quoting *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009)). The Court makes its determination without the need for additional discovery, and no summary trial as to the applicability of the Arbitration Agreement is necessary. *See Jin*, 966 F.3d at 827 ("[I]f the district court determines as a matter of law that the parties did or did not agree to arbitrate . . . it may grant or deny a motion to compel arbitration without proceeding to a § 4 trial[.]").

## IV. CONCLUSION

For the reasons set forth above, the Motion to Compel Arbitration (ECF No. 16) is **DENIED.** An appropriate order follows.

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: November 3, 2026

---

[8] Because the Court finds there lacks sufficient facts regarding the existence of an agreement to arbitrate, the Court will not review the scope of the Arbitration Agreement, whether the Arbitration Agreement is sufficiently explicit as a waiver of rights, or whether the Arbitration Agreement is substantively unconscionable. *See, e.g.*, *Conte v. Shear*, Civ. A. No. 20-16458, 2021 WL 11721659 (D.N.J. June 24, 2021).